1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    ABC Sand and Rock Company, Inc.,              No. CV-13-00058-PHX-NVW

                            Plaintiff,
10                                                  **ORDER**

11   vs.

12   Maricopa County, et al.,

13                            Defendants.

14          Before the Court is Defendants' Motion to Dismiss (Doc. 10).

15   **I.     LEGAL STANDARD**

16          On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all

17   allegations of material fact are assumed to be true and construed in the light most

18   favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

19   2009). To avoid dismissal, a complaint need contain only "enough facts to state a claim

20   for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

21   (2007). The principle that a court accepts as true all of the allegations in a complaint

22   does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*,

23   566 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads

24   factual content that allows the court to draw the reasonable inference that the defendant is

25   liable for the misconduct alleged." *Id.*

26   **II.    FACTS ALLEGED AND ASSUMED TO BE TRUE**

27          Defendant Flood Control District of Maricopa County ("District") is a political

28   subdivision of Defendant Maricopa County ("County") and the State of Arizona.

1    Defendants DeWayne Justice, Melvin Martin, Hemant Patel, Scott Ward, and Wylie

2    Bearup are members of the Flood Control Advisory Board ("District Board"), which

3    advises the County's Board of Supervisors regarding flood control, floodplain

4    management, drainage, and related matters.   The District Board also acts as the

5    administrative review board for administrative appeals.

6    Defendant Timothy Phillips is the Chief Engineer and General Manager of the

7    District.  Defendant Mike Jones is the District's Sand and Gravel Division Supervisor.

8    Defendant Jack Guzman is a sand and gravel inspector employed by the District.

9    Defendant Ed Raleigh is the District's Floodplain Administrator.

10    The District has prescribed regulations for permitting, set by the County Board of

11    Supervisors.  The primary requirement to obtain a sand and gravel permit is a mining

12    Plan of Development.  For many years, the District required only a very simple Plan of

13    Development.  Once mining permits are issued, they are renewed in five-year increments.

14    The District's custom and practice for sand and rock permit renewals has been to require

15    only the payment of the renewal fee and sometimes the completion of a simple permit

16    renewal form.  Pursuant to custom and practice, as well as regulations, permit renewals

17    are non-discretionary and automatic.  The District followed a practice whereby permit

18    renewals were effectively deemed renewed upon receipt of the operator's renewal fee,

19    and sometimes it did not formally process renewals for many months.

20    Plaintiff ABC Sand and Rock Company, Inc. ("Plaintiff") is a small sand and

21    gravel mining business that operates in Maricopa County.  It established a mining

22    operation in Glendale, Arizona ("Plant 1") in 1985 and another in Tonopah, Arizona

23    ("Plant 2") in 2002.  Plaintiff has had a permit for its operations since 1985, when permits

24    were first required by the County.

25    In 1995, the District did not formally process and approve Plaintiff's Plant 1

26    permit renewal until almost seven months after the formal expiration date.  In 2000,

27    Plaintiff obtained its Plant 1 renewal by submitting a simple renewal application and its

28    application fee, and the District did not formally process the Plant 1 renewal until more

1     than one year after the formal expiration date.  In 2006, Plaintiff obtained its Plant 1

2     renewal by simply submitting its renewal fee without a new application form.  Plaintiff's

3     2000 renewal application was simply annotated by the District inspector with a new

4     expiration date:  "EXP Date 2/17/2011."

5         For Plant 2, Plaintiff submitted its application fee and Plan of Development in

6     2006.  The District inspector directed where a berm needed to be installed, and upon its

7     completion, the inspector approved Plant 2 for operations.

8         After Defendant Phillips became General Manager of the District, it began

9     attempting to institute regulatory changes that Plaintiff's president believed state law did

10    not authorize the District to make.  On February 14, 2011, Plaintiff's president submitted

11    Plaintiff's permit renewal fee with a letter stating that he was seeking renewal of the

12    existing permit and was not making any change to his Plan of Development.  The letter

13    also set forth detailed criticism of the District and its proposed regulatory changes.  Also

14    in 2011, Plaintiff submitted extensive comments, criticism, and suggested revisions in

15    response to the District's draft of proposed regulations and was publicly critical of the

16    District.  When the District presented its proposed regulations to the County Board of

17    Supervisors, Plaintiff submitted its own legal analysis, comments, and suggested

18    revisions, and the District's proposed regulations were removed from the County Board

19    of Supervisors' meeting agenda.  Later, when the District's proposed regulations were

20    submitted to the County Board of Supervisors at a public hearing, Plaintiff's criticisms

21    were brought to the County Board's attention.  The County Board of Supervisors

22    ultimately rejected the District's proposal on November 30, 2011.

23         On March 10, 2011, the District inspected Plant 1 and approved it.  On that day,

24    the District inspector requested that Plaintiff submit a renewal application, and Plaintiff

25    did. On April 11, 2011, Defendant Jones issued a list of demands, including information

26    about operations, new engineering, and consent to entirely new permit terms on the

27    existing plan.

28

1      One of the new permit terms was the Property Owner Liability provision proposed

2  by the District to the County Board of Supervisors and publicly opposed by Plaintiff.

3  The Property Owner Liability provision required that liability be shifted from operators to

4  property owners even though County regulations allowed mining permits to be issued to

5  either property owners or operators.  Customarily, the sand and gravel operator held the

6  permit and was subject to the District's jurisdiction, not the property owner.  This shift in

7  liability was like requiring a strip mall property owner to obtain and be liable for the

8  liquor license of a bar that leases space in the mall.  Plaintiff believed that it would

9  expose property owners to the seizure of property by the District based on a tenant's

10  actions or inactions.

11      Plaintiff provided much of the information that Defendant Jones requested, and the

12  District ultimately abandoned its remaining new demands, except for the Property Owner

13  Liability provision.  The District, through Defendant Jones, continued to attempt to

14  require Plaintiff to agree to the Property Owner Liability provision even after the County

15  Board of Supervisors rejected it on November 30, 2011.  The District continued to post

16  the Property Owner Liability provision as a listed permit requirement on the District

17  website as late as April 2012.

18      On May 31, 2011, the District, through Defendant Raleigh, issued a Notice of

19  Violation against Plaintiff, claiming Plaintiff was operating without a permit.   The

20  District demanded that Plaintiff completely cease its business operations, which would

21  effectively put the company out of business.  Moreover, the Notice of Violation claimed

22  that Plaintiff had not renewed its permit in both 2006 and 2011.  Although the District

23  admitted that its records showed that Plaintiff's permit was renewed in 2006, it claimed

24  that its renewal was an error.  The District's former inspector who conducted the 2006

25  inspection testified that he performed the inspection and renewed the permit on behalf of

26  the District.  He further testified that he noted in the District's inspection database, which

27  he maintained, that Plaintiff's permit was renewed.

28

1        In September 2011, Plaintiff met with the Defendant Raleigh and the District's

2 attorneys, and the parties came to an agreement.  To confirm the terms, Plaintiff's

3 accountant and advisor read over the final agreement, and everyone agreed, including

4 Defendant Raleigh.  But the next morning, the District's lawyer sent a typed copy of the

5 agreement, with drastically different terms than those the parties had agreed upon.  The

6 District continued to expand its list of demands in December 2011 and in March 2012.

7        Plaintiff leases approximately 200 of the 240 acres of Plant 1 from the Arizona

8 State Land Department ("ASLD"), which holds the property in trust for the State.

9 Defendant Jones and Defendant Guzman went to the ASLD and demanded that ASLD

10 terminate its lease with Plaintiff.   ASLD notified Plaintiff, conducted its own

11 investigation, and concluded that Plaintiff was in compliance with the law.  Plaintiff also

12 was notified by Fort McDowell Yavapai Materials that the District attempted to halt its

13 business with Plaintiff.  In addition, the District contacted the Arizona Department of

14 Transportation, and as a result, Plaintiff was removed from the Department's bid list and

15 lost business.

16        Another sand and gravel operator, M.R. Tanner Mining, operated in the floodplain

17 without a permit for nine years.  On September 15, 2011, Plaintiff presented evidence of

18 M.R. Tanner Mining's operation without a permit during a District administrative

19 hearing.  At the end of the day, Defendant Raleigh contacted M.R. Tanner Mining and

20 offered a temporary permit.  The District did not issue a Notice of Violation or impose a

21 fine on M.R. Tanner Mining for operating without a permit for nine years.  In contrast,

22 the District issued a Notice of Violation and imposed a fine for $169,000 on Plaintiff for

23 allegedly operating without a permit for a number of months.

24        In early 2011, the District provided notice and conducted a routine inspection of

25 Plant 1 in March 2011.  No problems were found, and the District approved the

26 operations.  Near the end of 2011, however, Defendant Guzman attempted to inspect

27 Plant 1 with less than one day's notice.  In July 2012, Defendant Guzman arrived at Plant

28 1 without any notice and attempted to conduct an inspection.  On another occasion in

1   2012, Defendant Guzman gave no notice of an inspection, but conducted an inspection of

2   Plant 2 without permission to be on the property.  Defendant Guzman admitted that he

3   was directed by Defendant Jones and other District superiors to treat Plaintiff in this way.

4   The District has directed a conspiracy to put Plaintiff out of business, which

5   included use of the administrative review process.  Defendant Phillips directed the

6   conspiracy involving Defendants Raleigh, Jones, Guzman, the individual District Board

7   members, and others.  On September 12 and 15, 2011, a hearing was held before an

8   administrative hearing officer regarding Plaintiff's challenge to the Notice of Violation.

9   The hearing officer found that Plaintiff's permit was renewed in 2006 and expired on

10   May 14, 2011.  Subsequently, Defendant Phillips issued his final order, adopting the

11   hearing officer's ruling and issuing a fine of $169,000.  Plaintiff appealed the hearing

12   officer's ruling, and the case was set for hearing before the District Board.  On January

13   25, 2012, the District held an ex parte hearing without notice to plan ruling against

14   Plaintiff at the administrative appeal hearing.  The participants included Defendant

15   Phillips, the District Board members, and the District Board attorney.  The meeting was

16   recorded, and subsequently Plaintiff obtained a copy of the recording.  Defendant Phillips

17   presented his position that Plaintiff was in violation of the permitting rules.  District

18   Board members indicated they were ready to rule against Plaintiff, and one even

19   questioned whether a hearing was necessary.  On March 28, 2012, when the

20   administrative appeal was heard, Plaintiff objected to the District Board serving as the

21   review panel due to bias.  After deliberations, the District Board ruled in favor of Plaintiff

22   and found that its February 2011 permit renewal was valid and in effect.  Against the

23   advice of the County Board of Supervisors, the District decided to appeal its own ruling

24   to the Superior Court.  Because the deadline to appeal had passed on May 2, 2012, the

25   District Board issued a new order on June 27, 2012, restating its March 28, 2012 final

26   decision, and on July 31, 2012, filed its appeal in Superior Court.

27   The Complaint identifies five claims for relief, the last of which is a remedy, not a

28   claim:  (1) Violation of 42 U.S.C. § 1983:  Retaliation of ABC's First Amendment

1    Rights; (2) Violation of 42 U.S.C. § 1983:  Violation of Due Process; (3) Violation of 42

2    U.S.C. § 1983:  Violation of Equal Protection; (4) Violation of 42 U.S.C. § 1985:

3    Conspiracy; and (5) Injunctive Relief.  Each claim is alleged against all Defendants.

4    **III.    ANALYSIS**

5           **A.    Exhaustion of Administrative Remedies**

6          Defendants contend that this action should be dismissed because Plaintiff has

7    failed to exhaust administrative remedies.  Exhaustion of state administrative remedies is

8    not a prerequisite to bringing an action pursuant to § 1983 except as required under other

9    federal statutes not applicable here.  *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982);

10    *Heck v. Humphrey*, 512 U.S. 477, 480 (1994).

11           **B.    Compliance with Arizona Notice of Claim Statute**

12          Defendants contend that Plaintiff's state law claims must be dismissed for failure

13    to comply with A.R.S. § 12-821.01, the Arizona notice of claim statute.  Plaintiff states

14    that none of the claims alleged in the Complaint are based on state law.  State notice of

15    claim statutes do not apply to actions under § 1983.  *Felder v. Casey*, 487 U.S. 131, 140-

16    41 (1988), *superseded by statute on other grounds*, 42 U.S.C. § 1997(e)(a) (2011).

17           **C.    Statute of Limitations**

18          Defendants contend that Plaintiff's state law claims must be dismissed as time-

19    barred by A.R.S. § 12-821.  Again, Plaintiff states that none of the claims alleged in the

20    Complaint are based on state law.

21           **D.    Absolute Immunity**

22          Defendants contend that claims against the County and District Board are barred

23    by A.R.S. § 12-820.01, which provides public entities absolute immunity in specific

24    circumstances.  However, Defendants merely quote the statute and do not present any

25    argument or analysis regarding how the statute applies here.  The statute applies only to

26    state law claims, which are not pleaded here.  Defendants do not mention absolute

27    immunity in their Reply; therefore, this defense is also deemed abandoned.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.     Municipal Liability Under § 1983

The parties agree that there is no respondeat superior liability under § 1983 claims. Plaintiff contends that the Complaint alleges only direct § 1983 claims against the County, District, and individual employee Defendants.   Defendants contend that the Complaint "fails to state a claim for deliberate indifference."

"To bring a § 1983 claim against a local government entity, a plaintiff must plead that a municipality's policy or custom caused a violation of the plaintiff's constitutional rights." *Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 992-93 (9th Cir. 2011).   A plaintiff must show (1) he possessed a constitutional right of which he was deprived, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy is the "moving force behind the constitutional violation." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).   "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury," and the plaintiff must establish "that the injury would have been avoided had proper policies been implemented." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006).

The Complaint alleges that Defendants' actions are the actions of the County and the District.   The actions alleged are those of the highest levels of investigatory and enforcement actors of the District.   The Complaint further alleges they executed acts, policies, procedures, customs, and training (or lack of training) in violation of Plaintiff's constitutional rights, knew of the unlawful conduct and approved of it, knew of the unlawful conduct and ratified it by inaction, and/or were deliberately indifferent to the execution of such conduct. The Complaint provides specific factual allegations regarding each Defendant's conduct sufficient to give notice of the substance of Plaintiff's claims against each Defendant.

1

### F.    Qualified Immunity

2          The Complaint names individual Defendants in their official capacity as well as

3   their individual capacity.  Defendants contend that claims against the District employees

4   and the District Board members are barred by qualified immunity because the

5   constitutional rights allegedly violated were not clearly established.

6          "Qualified immunity shields federal and state officials from money damages

7   unless a plaintiff pleads facts showing (1) that the official violated a statutory or

8   constitutional right, and (2) that the right was 'clearly established' at the time of the

9   challenged conduct."  *Ashcroft v. al-Kidd*, __ U.S. __, 131 S. Ct. 2074, 2080 (2011).

10  Courts have discretion to decide which of the two prongs of the qualified immunity

11  analysis should be addressed first and may grant qualified immunity on the basis of the

12  second prong alone without deciding the first prong.  *Pearson v. Callahan*, 555 U.S. 223,

13  236 (2009); *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010).

14         "A Government official's conduct violates clearly established law when, at the

15  time of the challenged conduct, the contours of a right are sufficiently clear that every

16  reasonable official would have understood that what he is doing violates that right."

17  *Ashcroft v. al-Kidd*, 131 S. Ct. at 2083 (internal quotation and alteration marks omitted).

18  For a right to be "clearly established," there need not be a case directly on point, but

19  "existing precedent must have placed the statutory or constitutional question beyond

20  debate."  *Id.*  "The principles of qualified immunity shield an officer from personal

21  liability when an officer reasonably believes that his or her conduct complies with the

22  law."  *Pearson*, 555 U.S. at 244.

23         The Complaint alleges that Defendants knew of the improper treatment of Plaintiff

24  and permitted it to continue.  Defendants state, "There is no case law that would have put

25  Defendants on notice that their conduct was violative of any clearly established rights."

26  But Defendants would not need case law to know that arbitrarily changing permit

27  renewal requirements without notice, imposing sanctions on Plaintiff and not on other

28

1  similarly situated operators, attempting to impose unlawful permit requirements, and

2  holding secret ex parte District Board meetings in retaliation for Plaintiff's public

3  criticism of the District would violate Plaintiff's First Amendment, due process, and

4  equal protection constitutional rights.  On the facts alleged, none of the Defendants is

5  entitled to qualified immunity protection.

6  **G.    Issues Raised for the First Time in Reply**

7  Defendants raise for the first time in their Reply that the Flood Control Advisory

8  Board and Board of Hearing Review are non-jural entities, but the Complaint does not

9  identify them as defendants.  Defendants also raise for the first time in the Reply issues

10  regarding individual Defendants Wylie Bearup and Melvin Martin, but the Court

11  considers only arguments presented in Defendants' Motion to Dismiss.

12  IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. 10) is

13  denied.

14  Dated this 18th day of April, 2013.

15

16

17  Neil V. Wake

18  United States District Judge

19

20

21

22

23

24

25

26

27

28